UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
WILMINGTON SAVINGS FUND SOCIETY, FSB
*Not Individually but as Trustee for Carlsbad Funding
Mortgage Trust doing business as* Christiana Trust,

                       Plaintiff,                              **REPORT AND RECOMMENDATION**

           -against-                                       CV 17-6708 (ENV) (ARL)

LORIN V. CIRINCIONE *also known as* Lorin Cirincione,
SUFFOLK FEDERAL CREDIT UNION, CDCLI FUNDING
CORPORATION, COMMUNITY DEVELOPMENT
CORPORATION OF LONG ISLAND INC., CITIBANK N.A.,
ARTHUR E. HOUDE, JR. AND SUSAN M. HOUDE
*As Trustee or Their Successor in Trust Under the Houde
Living Trust Dated August 20, 2001,*

                       Defendants.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Before the Court, on referral from District Judge Vitaliano, is the plaintiff's Motion for Summary Judgment, Default Judgment and Judgment of Foreclosure and Sale. For the reasons set forth below, the undersigned respectfully recommends that the plaintiff's Motion for Summary Judgment and for a Judgment of Foreclosure and Sale as against the defendant Lorin V. Cirincione be denied, but that the Motion for Default Judgment as against the non-appearing defendants be granted.

## BACKGROUND

      A.      **The Mortgage and the Steps Leading to the Foreclosure Proceeding**

      The plaintiff, Wilmington Savings Fund Society, FSB, as a trustee for Carlsbad Funding Mortgage Trust ("Wilmington"), commenced this action on November 16, 2017, against Lorin V. Cirincione ("Cirincione"), Suffolk Federal Credit Union ("SFCU"), CDCLI Funding Corporation ("CDCLI"), Community Development Corporation of Long Island Inc. ("Community Development"), Citibank N.A. ("Citibank"), and Arthur E. Houde, Jr. and Susan

M. Houde as Trustee or Their Successor in Trust Under the Houde Living Trust Dated August 20, 2001 (the" Houde Trust") pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") §§ 1301 *et seq.,* seeking to foreclose on a mortgage encumbering the property commonly known as 4225 Mill Lane, Mattituck, New York 11952.[1] Wilmington is a federally chartered savings bank with home offices located in Wilmington, Delaware.  Pl.'s 56.1 Stmt. ¶ 1.[2]  According to the plaintiff, on October 28, 2002, Cirincione obtained a $305,000.00 loan from CitiMortgage, Inc. secured by a Mortgage on real property located at 4225 Mill Lane, Mattituck, NY 11952 (the "Property").  *Id.* ¶ 3.  The Mortgage was recorded in the Suffolk County Clerk's Office on December 14, 2002 under liber 20471 at page 609.  *Id.*  The loan was also memorialized by a Consolidated Note dated July 21, 2003 (the "Note").  *See* Vargas Decl. Ex. B; Cirincione Aff. ¶ 13.  The principal amount owed under the Note was $305,000.00 with interest accruing at a yearly rate of 5.625% for a 30-year term.  *Id.*  In addition to paying principal and interest, Cirincione was required to make a monthly payment, held in escrow, for real property taxes and homeowner's insurance.  Cirincione Aff. ¶ 13.  Cirincione contends that his monthly principal and interest payment was $1,755.75 and his monthly escrow amount was approximately $1,117.41.  *Id.*

---

[1] A Certificate of Merit was filed in conjunction with the complaint on November 16, 2017.  ECF No. 1-3; *see* Vargas Decl. Ex. B.  On November 21, 2017, Wilmington also filed a Notice of Pendency in the Suffolk County Clerk's Office in accordance with RPAPL § 1331 and the Civil Practice Law and Rules ("CPLR") Article 65.  *See* Vargas Decl. ¶ 4, Ex. C.

[2] Cirincione has not followed the directives of Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1").  Local Rule 56.1(a) requires a party opposing a motion for summary judgment to submit a statement responding to each numbered paragraph in the movant's Rule 56.1 statement of facts, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried (the "counterstatement").  *See* Local Rule 56.1(b).  The opposing party's counterstatement must also be followed by citation to evidence that would be admissible.  *See* Local Rule 56.1(d).  Where a party opposing a motion for summary judgment fails to submit a proper counterstatement, the facts set forth in a moving party's Rule 56.1 statement are generally deemed to be admitted.  *See* Local Rule 56.1(c).  However, mindful of the fact that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), the undersigned has also undertaken an independent review of the record.

On May 19, 2014, the Mortgage was assigned to Federal National Mortgage Association ("FNMA"). *See* Vargas Decl. Ex. B. The assignment was recorded in the Suffolk County Clerk's Office on June 10, 2014 under liber 22497 at page 311. *Id.* Around the same time, Seterus, Inc. ("Seterus"), a debt collection agency with a principle place of business in Beaverton, Oregon, began servicing the loan. *See* Cirincione Decl. Ex. B. On June 21, 2016, the Mortgage was then reassigned to Wilmington. *See* Vargas Decl. Ex. B. The assignment evidencing the transfer of interest to Wilmington was recorded in the Suffolk County Clerk's Office on October 28, 2016 under liber 22751 at page 309. *Id.* The Note accompanying the Mortgage was physically delivered to Wilmington and was specifically endorsed to the plaintiff. *Id.* Wilmington remains the holder of the Note and Mortgage. Pl.'s 56.1 Stmt. ¶ 2. The loan is serviced by Rushmore Loan Management Services ("Rushmore"). *See* Cirincione Decl. Ex. E.

On April 1, 2015, prior to the reassignment to Wilmington, Cirincione allegedly defaulted under the terms of the Note and Mortgage. Pl.'s 56.1 Stmt. ¶ 4. In compliance with RPAPL § 1304, a 90-day pre-foreclosure notice was sent to Cirincione via first class and certified mail. *Id.* ¶ 5; *see* Vargas Decl. Exs. H, K. The 90-day notice, which was mailed on March 27, 2017, listed at least five free (5) housing counseling agencies for Cirincione to contact. *See* Vargas Decl. Exs. H, K. According to the notice, as of March 27, 2017, Cirincione was in default for 726 days and owed $69,238.97. *Id.* Ex. K. Within three business days of mailing the 90-day notice, Rushmore, serving as Attorney in Fact for Wilmington, electronically filed a copy of the notice with the Superintendent of Financial Services as required by RPAPL § 1306(2). *Id.* Ex. H. Cirincione failed to cure the alleged default. Accordingly, on May 30, 2017, a Notice of Intent to Foreclose was mailed to Cirincione at the Property. *Id.* Exs. H. As of the date of the Notice of Intent to Foreclose, $75,055.53 was allegedly due and owing. *Id.*

**B.     Cirincione's Chapter 13 Bankruptcy**

3

On April 23, 2010, five years before the alleged default that put this case in motion, Cirincione filed a Chapter 13 bankruptcy in the United States Bankruptcy Court, Eastern District of New York, bearing case number 10-72959.  Cirincione Aff. ¶ 4, Ex. A.  According to the Amended Chapter 13 Plan, Cirincione had four mortgages secured by the Property and was in arrears on the first mortgage, bearing loan no. 2001031394-6, in the amount of $51,761.32.  *Id.* Ex. A.  On May 19, 2015, as the bankruptcy proceeding was nearing a close, Michael Macco, the Chapter 13 Trustee, issued a Notice of Final Cure Payment to FNMA, who at that point was the holder of the Note, indicating that the amount of the pre-petition arrearage due to FNMA was $51,761.38 and that it had been paid in full by the Trustee.  *See* Vargas Reply Decl. at Ex. D.  Upon receipt, Gross Polowy, LLC., who was representing FNMA in the bankruptcy proceeding, filed a response acknowledging that FNMA had paid in full with respect to Cirincione's pre-petition default.  *Id.* Ex. E.  However, FNMA stated that it had not yet been paid certain post-petition amounts.  *Id.*  Specifically, FNMA indicated that Cirincione had failed to make 16 payments of $2,873.16, which were due from March 1, 2014 through June 1, 2015, or to make payment toward an additional unpaid balance of $2,461.63.  In sum, FNMA claimed that as of June 2015, Cirincione still owed $43,508.93.  *Id.*

Cirincione was served with a copy of FNMA's Response to the Notice of Final Cure Payment and did not respond.  Pl.'s Reply Mem. at 4.  Shortly thereafter, the bankruptcy was discharged.  *Id.* Ex. F.  Then*,* on August 5, 2015, Michael Macco, the Chapter 13 Trustee, submitted a Final Report and Account, which also reflected a $51,761.38 payment to FNMA.  *Id.* Ex. G.  Once again, Cirincione did not respond.  Nonetheless, Cirincione now contends that during the entire course of his bankruptcy proceeding, he made all of his monthly payments to the lender pursuant to the terms of the Note and Mortgage.  *Id.* ¶ 14.

**C.     The Post-Bankruptcy Debt Collection**

4

On September 17, 2015, following the close of the bankruptcy proceeding, Cirincione received a letter from Seterus indicating that that his home loan was 887 days in arrears and that $140,177.53 was due and owing. *Id.* Ex. D. According to Cirincione, he immediately wrote to Seterus advising that before the loan had been transferred to Seterus for servicing, CitiMortgage had inadvertently inflated his monthly payment from $1,755.75 to $7,381.65 due to a computer error. *Id.* He further advised that his entire pre-petition arrears amounting to $51,761.38 had been paid in full. *Id.* Following the reassignment to Wilmington, Rushmore continued to apply the same monthly payment when it began servicing the loan. *Id.* ¶ 18-19.

Cirincione claims that the loan reassignments made it impossible for him to get the mistake corrected. Cirincione Aff. ¶ 19. In addition, Cirincione contends that the lenders refused to allow him to make additional loan payments once they deemed him to be behind on his payments. *Id.* ¶ 16. For example, in September and October 2015, Cirincione sent Seterus checks for $2,933.72. *Id.* Ex. D. Seterus refused to apply the funds to the alleged balance because the "amount did not represent the contractual installment of $7,381.65." *Id.* Instead, his payments were placed in a "loan suspense account." *Id.* Cirincione argues, therefore, that Wilmington is partially responsible for his current arrears because its predecessor-in-interest actively discouraged Cirincione from paying on the Mortgage until the amount in dispute was first addressed. Def.'s Mem. at 5.

C.    **Procedural History**

On December 15, 2017, Cirincione was personally served with a copy of the underlying summons, complaint and certificate of merit. ECF No. 8. According to Wilmington, as of the date of the complaint, the unpaid balance on the loan was $240,985.56, together with interest. Pl.'s Mem. at 3. The defendant Citibank N.A. was served on December 1, 2017. ECF No. 7. SFCU, CDCLI and Community Development were served on December 13, 2017. ECF No. 8.

5

The Houde Trust was served on December 26, 2017. *Id*. On January 5, 2018, Cirincione filed an answer and counterclaims. ECF No. 9. Except for Cirincione, the defendants were served because they hold an interest in or lien on the Property and are, therefore, necessary defendants pursuant to RPAPL §1311 (3). To date, Citibank, SFCU, CDCLI, Community Development and the Houde Trust have failed to answer or respond to the complaint. On January 18, 2018, the plaintiff submitted a request to the Clerk of the Court to have a notation of default entered against the non-appearing defendants and, on January 28, 2018, the Clerk of the Court entered a notation of default against those defendants. On January 7, 2019, the plaintiff filed the instant motion.

## DISCUSSION

### A. Applicable Standards

1. Summary Judgment

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996), cert denied, 520 U.S. 1228 (1997).

6

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]here must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

    2.    Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d

7

Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

### B. Claims against Cirincione

Usually, "[o]nce a plaintiff mortgagee in a foreclosure action has established a *prima facie* case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *United States v. Leap*, CV 11–4822, 2014 WL 1377505, at *2 (E.D.N.Y. Feb. 18, 2014), *Report and Recommendation adopted by*, 2014 WL 1383139 (E.D.N.Y. Apr. 8, 2014). Here, Wilmington, has presented the requisite documentation including the Mortgage, the Note, and the Notices of Default to establish a prima facie case. It has also submitted an affidavit from Michael Bennett, an Assistant Secretary at Rushmore, averring that as of February 5, 2018, $240,985.56 remained due on the Note.

In effort to overcome the presumption, Cirincione argues that there are several questions of fact that warrant denied of the motion, including:

    (a) Did plaintiff improperly refuse payments that I had tendered?

    (b) Did plaintiff misapply payments that I had made?

    (c) Did plaintiff improperly attempt to collect mortgage arrears that were paid by the Chapter l3 Trustee in my bankruptcy proceeding?

>        (d) Did plaintiff improperly attempt to collect mortgage payments that I had made during the course of my bankruptcy proceeding?
>
>        (e) Did lender's errors in accounting contribute to a wrongful foreclosure?
>
>        (f) Did lender act in bad faith by failing to properly account for payments made?
>
>        (g) Did plaintiff fail to provide an accurate accounting of all amounts received?
>
>        (h) Does plaintiff possess the necessary loan documents to commence this action?
>
>        (i) Did plaintiff prove that all pre-foreclosure notices had been complied with?

Cirincione Aff. ¶ 2. Although Cirincione poses all of these "factual" questions, the genesis of the dispute appears to be the alleged post-petition arrears.

Cirincione has submitted numerous documents all of which he claims reflect the "errors caused by the lender." *Id*. ¶ 3. These documents include pages from his bankruptcy filing, canceled checks for payments made to the lender during the bankruptcy proceeding, various bank and property tax statements. *Id.* However, many of the documents can be disregarded as it fails to address the relevant time period. For example, Cirincione relies heavily on a letter from "CitiMortgage" reflecting that as of October 7, 2015, the unpaid principal on the loan was $0 and the escrow balance was also $0. *Id.* Ex. C. But, as noted above, by the time the bankruptcy was discharged, FNMA was the holder of the Note. As such, a letter from CitiMortgage showing a zero balance does not necessarily support the conclusion that FNMA was paid in full as of the close of the bankruptcy.

Cirincione has also submitted a copy of the Trustee's Status of Claims as of June 9, 2016, along with multiple bank statements and canceled checks. The "Payment History" set forth in the Trustee's status letter reflects that payments of $1,762 were made throughout the term of the bankruptcy proceeding, including between March 2014 and May 2015. Cirincione Aff. Ex. A.

9

However, the section in the report entitled "Disbursement Details" indicates that notwithstanding those payments, FNMA only received $51,761.38, the amount it was due for pre-petition arrears. Cirincione Aff. Ex. A. Cirincione also annexed numerous bank statements and canceled checks made payable to CitiMortgage that were sent before March 2014. These checks similarly fail to address the alleged post-petition arrears. *Id*.

Nevertheless, Cirincione has submitted a series of canceled checks made payable to Seterus between March 2014 and June 2015, each in the amount of $2,873.16, that appears to support his contention that the loan was current at the close of the bankruptcy. Moreover, Wilmington has not offered the Court a sufficient explanation as to why Cirincione's monthly payments were raised from of $2,873.16 to $7,381.65, a change that Cirincione claims is the result of the lender's attempt to recoup arrears that were paid in full by the Chapter 13 Trustee. Indeed, the Court is unable to reconcile how Cirincione's loan could have been in default for 887 days as of September 17, 2015 or how he could have owed $140,177.53 by October 22, 2015, four months after the bankruptcy was discharged. Accordingly, Cirincione has raised a question of fact as to whether $240,985.56 remains due on the Note as of February 5, 2018. Therefore, it is respectfully recommended that Wilmington's Motion for Summary Judgment and Judgment of Foreclosure and Sale be denied.

### C. Claims Against the Non-appearing Defendants

As previously mentioned, the complaint also names SFCU, CDCLI, Community Development, Citibank and the Houde Trust as defendants because they are alleged to have interests in the subject property. RPAPL § 1311 provides that the necessary parties to a mortgage foreclosure action include: "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." N.Y. RPAPL § 1311(3). "This rule 'derives from the underlying objective of foreclosure actions -- to

10

extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale.'" *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204, 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (quoting *N.C. Venture I, L.P. v. Complete Analysis, Inc.*, 22 A.D.3d 540, 803 N.Y.S.2d 95, 98 (2d Dep't 2005)). Courts in this district have found that entry of default judgment "is appropriate where the complaint alleges 'nominal liability -- i.e., that any judgments the Defaulting [d]efendants may have against [the debtor], if liens on the mortgaged property, are subordinate to the [plaintiff's] lien.'" *Id.* (quoting *Christiana Bank & Trust Co. v. Dalton*, No. 06-CV-3206, 2009 WL 4016507, at *5 (E.D.N.Y. Nov.17, 2009)). Here, the complaint contains well-pleaded allegations of nominal liability on the part of the non-mortgagor defendants. The undersigned, therefore, respectfully recommend that a default judgment be entered against the non-appearing defendants.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for plaintiff shall serve a copy of this Report and Recommendation on the defendants upon receipt and shall file proof of service with the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
       August 12, 2019

                                                                         _____/s/_____
                                                                         ARLENE R. LINDSAY
                                                                         United States Magistrate Judge